**PLATT AMUSEMENT ARCADE, INC., Sneak-A-Peak, Inc., Isadore Rosenberg, Jean Bauers, Max Levine, Arthur Berta, Louis Locanta and Fredda Thomas**

v.

**Stephen A. JOYCE, Superintendent of Police, Pittsburgh, Allegheny County, Pennsylvania, Mayer DeRoy, an Assistant Superintendent of Police, Pittsburgh, Allegheny County, Pennsylvania, and Regis Holleran, Police Officer of the City of Pittsburgh, Allegheny County, Pennsylvania.**

No. 70-929.

United States District Court, W. D. Pennsylvania.

Aug. 18, 1970.

3. G.S. § 1-52(5).

Matson & Rothman, Pittsburgh, Pa., for plaintiffs.

Ralph Lynch, Jr., City Sol., Grace S. Harris, Ass't. City Sol., Pittsburgh, Pa. for defendants.

OPINION

WEIS, District Judge.

The continuing uncertainty about the proper procedures to be followed in obscenity cases brings another matter in that category to this court. On July 27, 1970 police officers from the City of Pittsburgh raided three establishments owned by the corporate plaintiffs, Platt Amusement Arcade, Inc., Sneak-A-Peak, Inc., and seized a quantity of motion picture films which were used in the projectors for this "peep show" type of operation. The seizures were made pursuant to search warrants secured from the chief magistrate of the City of Pittsburgh on affidavit of a police officer describing the type of materials as being obscene and after the magistrate and a judge of the Court of Common Pleas of Allegheny County viewed films of similar characteristics previously purchased from the plaintiffs' establishments by the officer.

In the course of the raid the individual plaintiffs were arrested and charged with violation of the Pennsylvania Obscenity Statute, contributing to the delinquency of a minor, and corrupting the morals of a minor. Two sets of prosecutions are now pending in the state court, the preliminary hearings having been scheduled but not yet held.

The first of the prosecutions are those based upon the movies purchased by the police a few days before the raid and for which summons were issued without arrests pursuant to the provisions of the

Pennsylvania Rules of Criminal Procedure. The second set of prosecutions arise from the arrests occurring on the night of the "raid".

The plaintiffs have come to this court asking for:

(1) Return of the movies seized on July 27, 1970;

(2) An injunction against prosecution of both series of criminal actions in the state courts;

(3) An injunction enjoining future prosecutions on the claim of harrassment by the city authorities who allegedly threatened to continue arrests for similar offenses;

(4) A request to convene a three judge statutory court to pass on the constitutionality of:

(a) the Pennsylvania Law on obscenity;

(b) Pennsylvania Statutes relating to corrupting the morals of a minor and contribution to the delinquency of a minor.

(5) Damages for interruption of the business of the corporate plaintiffs at one location for a number of days following the "raid".

The City of Pittsburgh, the actual, although not the named defendant, in advance of the hearing agreed to return all of the films except approximately twenty which were duplicates of those in stock at the plaintiffs' "arcade"; those purchased by the police officers; and the one film which was in a projector allegedly being viewed by two 16 year old youths at the time of the raid.

Unquestionably, the law regarding obscenity is in a period of change and there is a great deal of confusion regarding both the standards to be utilized in determining obscenity and the proper procedure to be followed in instituting various forms of legal action. The situation has resulted in the large number of cases coming before the courts and the consequent plethora of opinions. A recent precedent in this field is not one occurring within years, months or weeks, but rather days.

The Supreme Court requirement of prior adversary hearing, as enunciated in the case of Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809, has been applied most recently by the Court of Appeals of this circuit in Cambist Films, Inc. v. Duggan, 3 Cir., 420 F.2d 687, and we feel compelled by that ruling to require that the City return all the films to the plaintiff owners, except those purchased by the police officers.

▉ We do note that the films involved in this case were not those of the full length type designed for theater exhibition as in the Cambist v. Duggan matter but rather fall into a category of objects which are made available for public viewing but only on an individual basis. It was because of the concept that a large number of people could be expected to view a nationally distributed motion picture that the Court of Appeals in Bethview Amusement Corp. v. Cahn, 2d Cir., 416 F.2d 410, concluded that the Books v. Kansas doctrine applied. That same Appeals Court followed a consistent line of reasoning in Astro Cinema Corp. Inc. v. Mackell, 2 Cir., 422 F.2d 293, but recognized the distinction between the seizure of a single book, which would have a very limited effect upon the public, and the result of the suppression of a motion picture being shown in a commercial theater. It is our conclusion that the "peep show" type of operation does involve a sufficient number of customers, albeit of dubious taste, so that the Cambist v. Duggan decision must apply.

However, we do recognize the problems faced by the state in producing evidence in court to obtain convictions for violations of its criminal obscenity statutes. Most of the decisions relying on the prior adversary hearing requirement give scant consideration to the serious practical problems confronting the prosecutors in securing necessary evidence. It is naive indeed to expect wholehearted and good faith cooperation by prospective defendants to make such evi-

dence available in the absence of some type of statutory or judicial compulsion.

The prior adversary hearing requirement involved in a massive seizure case like Books v. Kansas, supra, or motion picture censorship procedures as in Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649, assumes different proportions when applied to a routine criminal prosecution. Only small quantities of the offending material are needed for use as evidence in a criminal trial and such evidentiary purposes do not suppress the use of copies of the same or similar material. The prior adversary hearing rule in criminal cases applied in a blanket and non-critical fashion without any consideration of the surrounding circumstances is hardly a satisfactory doctrine.

One solution which has been proposed is set out in the case of Tyrone, Inc. v. Wilkinson, 4 Cir., 410 F.2d 639, cert. denied 396 U.S. 985, 90 S.Ct. 478, 24 L. Ed.2d 449, Bethview v. Cahn, supra, and Metzger v. Pearcy, 7 Cir., 393 F.2d 202. While the courts in those cases required that the materials in controversy be returned to the owners, they did approve the practice of requiring the defendants in the criminal actions to produce the motion picture films for the reasonable use of the prosecution in the preparation of, and use at time of trial. This procedure appears to strike a reasonable balance between the rights of the respective parties and one which we choose to follow in this case. It should be clear, however, that the films to be produced at the time of the criminal proceedings are to be in exactly the same condition as they are when returned to the plaintiffs in this case by the police officers. There is to be no mutilation, deletion, or unexplained disappearance of the films when production is requested by the prosecuting authorities.

It is appropriate at this time to emphasize that the emerging procedural requirements do not bar criminal convictions for violation of appropriate statutes dealing with public exhibitions of pornography. See, for example, the cases of Pinkus v. Arnebergh, D.C., 258 F.Supp.

996, Schackman v. Arnebergh, D.C., 258 F.Supp. 983, where state convictions of obscenity were approved and United States v. Wild, 2 Cir., 422 F.2d 34, where a conviction of violation of the Comstock Act was affirmed.

■ Having disposed of the issue of possession of the films, we turn now to the request for injunctive relief against prosecution by the state authorities. Preliminarily it must be noted that the criminal actions in the state court were commenced before the present suit was filed. Testimony at the evidentiary hearing established that the criminal informations had been filed, the plaintiffs arrested, admitted to bail and preliminary hearings scheduled before the case at bar was instituted.

28 U.S.C. § 2283 provides that:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

This statute was most recently reviewed by the Supreme Court in Atlantic Coastline Railroad v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234. There the court said:

"On its face the present Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. * * * Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." (p. 4472)

Even if the statute were not applicable, the philosophy expressed by the

Court, reaffirming that set out in Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324, would require that the request for an injunction be denied. We have every confidence that the constitutional issues raised by the plaintiffs in this case will be fully and competently considered by the state trial and appellate courts. It should be clearly understood that nothing in the disposition of this case by this court is intended in any way to affect the ruling of the appropriate state courts on any problems of admissibility of evidence in the pending cases.

■ Plaintiffs have also asked for an injunction to prevent future proceedings on the allegations that law enforcement authorities have threatened future arrests, harassment, and interference with the plaintiffs' business. A hearing was held in this court at which time the plaintiffs were free to produce evidence on this and the other points raised by them. However, no testimony establishing such allegations to our satisfaction was offered. To the contrary, representation was made in open court by defendants' counsel that the City had no intention of repeating the procedures followed in this particular situation. In addition, the police officer in charge of the raid testified that his instructions were that there was not to be a mass seizure but that certain items only were to be seized. Apparently there was some failure of communication which resulted in the large number of films being taken by the police. Under these circumstances we find no basis for the injunctive relief requested by the plaintiffs. See Milky Way Productions Inc. v. Leary, D.C., 305 F.Supp. 288 (3 judge court), cert. denied, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed. 2d 78.

The claim for damages, included as a claim for relief by the plaintiffs, will not be considered in this proceeding. After the evidentiary hearing was concluded, a conference was held in chambers attended by counsel for both parties and at that time it was agreed that the claim for damages would be withdrawn from this proceeding with the clear understanding that such action is without prejudice to the plaintiffs' right to file a suit at a later time either in this court or others. Similarly, counsel for plaintiffs has withdrawn the request for a statutory court to consider the constitutionality of the obscenity statute and the statute relating to contributing to the delinquency of a minor.

This opinion embodies the findings of fact and conclusions of law pursuant to F.R.Civ.P. 52.

## ORDER OF COURT

And now, to-wit, this 18 day of August, 1970, the City of Pittsburgh is ordered to return to Joel Platt, Secretary-Treasurer of the Platt Amusement Arcade, Inc. and Sneak-A-Peak, Inc., the films seized on July 27, 1970 with the exception of the following:

| Title | Number | Where Found |
|---|---|---|
| "Angela and Al" | PVS 014 | 637 Liberty Avenue |
| "Darwin and Randy" | PVS 010 | 701 Penn Avenue |
| "Janice and Chuck" | IG – 315 | 637 Liberty Avenue |
| (Movie from Booth 3) Unnamed | | 801 Liberty Avenue |
| (Booth 21) | Gem 10 | 801 Liberty Avenue |

The films in the foregoing list will be made available to the prosecution in the cases brought against Platt Amusement Arcade, Inc., Sneak-A-Peak, Inc., Isidore Rosenberg; Jean Bauers; Max Levine; Arthur Berta; Louis Locanta and Fredda Thomas at the request of the prosecuting authorities in prepara-

tion for, and at the trial of the cases. The City of Pittsburgh, preferably in cooperation with counsel for the plaintiffs, shall make such identification of these films, copy, mark, or seal them, or utilize any other means which may be reasonably necessary to insure that the films when produced by the said Joel Platt shall be in the same condition as at the time of delivery by the City of Pittsburgh. Failure to produce the films on request in the same condition as at the present time will be grounds for invoking the powers of this court to take such action as may be appropriate under the circumstances.

The request for preliminary injunction to enjoin the criminal prosecutions now pending in the courts of Pennsylvania is denied.

The request for preliminary injunction to enjoin future criminal prosecutions is denied.

The claim for property damage is dismissed without prejudice.

The request for convening a statutory court having been withdrawn by the plaintiffs will not be considered by this court.