## DARREL JOHNSON v. CITY OF ROCHESTER AND OTHERS.

197 N. W. 2d 244.

April 28, 1972—No. 43207.

*Gerald H. Swanson,* City Attorney, and *Richard H. Bins,* Assistant City Attorney, for appellant.

*Robert J. Milavetz,* for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Hachey, JJ.

OTIS, JUSTICE.

This is an appeal by the city of Rochester under Minn. St. 632.11, subd. 1(3), from an order of the district court, authorized by § 626.21, requiring the city to return to plaintiff-respondent, Darrel Johnson, coin-operated machines and films seized by the city on the grounds the films were obscene. The only issue is whether the search warrants under which the machines and

films were seized were valid under the First Amendment without a prior adversary judicial hearing. We hold that the procedure adopted was constitutionally deficient and affirm.

In March 1971, in the city of Rochester, the individual police officers on two separate occasions viewed motion pictures in coin-operated machines owned by plaintiff. The first officer viewed 7 films, on the basis of which he obtained a search warrant from the municipal court and seized 20 machines and films. Four days later a different officer, having viewed 7 other films operated by plaintiff, also obtained a warrant and seized 14 machines and films. On the date the first warrant was executed, a criminal complaint was filed against plaintiff alleging a violation of § 617.241, for unlawfully exhibiting obscene motion picture films. Plaintiff thereupon brought this action to recover his property.

1. In ordering the city to return to plaintiff all of the motion picture machines and films, the court was of the opinion that the seizure of the only available copy of a film is equivalent to mass seizures of all copies of a publication, conduct proscribed by the Constitution absent a prior adversary hearing to determine whether the subject matter of the material enjoys First Amendment freedom-of-speech protection. We concur in this conclusion. The constitutional mandates which govern us have been enunciated in a series of United States Supreme Court decisions. Marcus v. Search Warrant of Property, 367 U. S. 717, 81 S. Ct. 1708, 6 L. ed. 2d 1127 (1961); A Quantity of Copies of Books v. Kansas, 378 U. S. 205, 84 S. Ct. 1723, 12 L. ed. 2d 809 (1964); Freedman v. Maryland, 380 U. S. 51, 85 S. Ct. 734, 13 L. ed. 2d 649 (1965); Lee Art Theatre, Inc. v. Virginia, 392 U. S. 636, 88 S. Ct. 2103, 20 L. ed. 2d 1313 (1968); Blount v. Rizzi, 400 U. S. 410, 91 S. Ct. 423, 27 L. ed. 2d 498 (1971).

In Marcus, the court held (367 U. S. 731, 81 S. Ct. 1716, 6 L. ed. 2d 1136):

"* * * [U]nder the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with

158

obscenity as here involved without regard to the possible consequences for constitutionally protected speech.

"We believe that Missouri's procedures as applied in this case lacked the safeguards which due process demands to assure nonobscene material the constitutional protection to which it is entitled. * * * [T]he warrants issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene. * * * They were provided with no guide to the exercise of informed discretion, because there was no step in the procedure before seizure designed to focus searchingly on the question of obscenity."

The court concluded by stating (367 U. S. 738, 81 S. Ct. 1719, 6 L. ed. 2d 1139):

"Mass seizure in the fashion of this case was thus effected without any safeguards to protect legitimate expression."

Accordingly, the seizure was held to be invalid.

The city of Rochester argues that by the terms of the municipal court's search warrants plaintiff was accorded the right on 24 hours' notice to move for release of the films on the ground they were not constitutionally obscene, and that this supplied the necessary judicial adversary hearing. This argument was rejected in A Quantity of Copies of Books v. Kansas, where the court said (378 U. S. 212, 84 S. Ct. 1727, 12 L. ed. 2d 814):

"Nor is the order under review saved because, after all 1,715 copies were seized and removed from circulation, P-K News Service was afforded a full hearing on the question of the obscenity of the novels. For if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgement of the right of the public in a free society to unobstructed circulation of nonobscene books."

The inclusion of the right to petition for a return of plaintiff's property in the municipal court order is ineffective for another

reason. It attempts to shift the burden of proof to the owner, whereas the court in Freedman v. Maryland, *supra,* made it clear that such burden remains with the censor. That concept was reiterated in Blount v. Rizzi, *supra.*

The city relies for reversal on Milky Way Productions, Inc. v. Leary, 305 F. Supp. 288 (S. D. N. Y. 1969), affirmed without opinion, 397 U. S. 98, 90 S. Ct. 817, 25 L. ed. 2d 78 (1970) ; United States v. Fragus, 422 F. 2d 1244 (5 Cir. 1970) ; Id. 428 F. 2d 1211 (5 Cir. 1970); Rage Books, Inc. v. Leary, 301 F. Supp. 546 (S. D. N. Y. 1969) ; People v. Bonanza Printing Co. Inc. 271 Cal. App. 2d Supp. 871, 76 Cal. Rptr. 379 (1969) ; and United States v. Wild, 422 F. 2d 34 (2 Cir. 1969), certiorari denied, 402 U. S. 986, 91 S. Ct. 1644, 29 L. ed. 2d 152 (1971). We do not find these cases persuasive authority. The Milky Way case did not involve the seizure of a publication but merely held that no prior adversary hearing was necessary before the publishers of obscene material could be arrested. We concur in that conclusion. No claim is made by plaintiff that he cannot be arrested without such a hearing.

The discussion of a prior adversary hearing in Fragus was dictum. All the court determined was that a plea of guilty had been knowingly and intelligently entered, and it affirmed the conviction. In Bonanza, the Appellate Department of the California Superior Court simply sustained an order suppressing evidence of obscenity, stating that its publication could not be punished without a violation of the First Amendment. The United States District Court in Rage Books justified the seizure of obscene material without a prior adversary hearing on the ground that it was otherwise in danger of becoming unavailable to the prosecution if it were sold or destroyed. However, this argument was rejected by the United States Court of Appeals in the same circuit in Bethview Amusement Corp. v. Cahn, 416 F. 2d 410 (2 Cir. 1969), certiorari denied, 397 U. S. 920, 90 S. Ct. 929, 25 L. ed. 2d 101 (1970).

Finally, although the original Wild opinion appears to support

the position of the city, on rehearing that court recognized the fact that another division of the same circuit had come to a different conclusion in Bethview. The court in Wild distinguished Bethview by pointing out that in Wild the court was reviewing a conviction, whereas in Bethview the proceeding was conducted prior to trial and did not preclude the use of the film at the trial. On the question of whether there was a "massive seizure" in Wild, the court said that issue had not been litigated in the trial court and the record was therefore inadequate.

We hold that the trial court was correct in finding the seizure unconstitutional and in directing that plaintiff's property be returned to its owner. There is merit in the city's complaint that, unlike the massive publication of books and magazines where one copy of the offensive material can readily be made available to the state, single film exhibits such as we are dealing with here cannot easily be duplicated for purposes of preserving the evidence. The argument cuts both ways, however, since the very purpose of the rule adopted by the United States Supreme Court is to give effect to the First Amendment by denying the state the right to suppress what may be nonobscene material previously assessed only by a single police officer.

The nearly unanimous weight of authority prohibits a seizure of allegedly obscene material prior to an adversary judicial hearing.[1] But, recognizing the practical problem of preserving evidence, courts have proposed a number of devices to meet the problem. Metzger v. Pearcy, 393 F. 2d 202 (7 Cir. 1968) ; Tyrone, Inc. v. Wilkinson, 410 F. 2d 639 (4 Cir.), certiorari denied, 396 U. S. 985, 90 S. Ct. 477, 24 L. ed. 2d 449 (1969) ; United States v. Alexander, 428 F. 2d 1169 (8 Cir. 1970) ; Platt Amusement Arcade, Inc. v. Joyce, 316 F. Supp. 298 (W. D. Pa. 1970) ; Astro Cinema Corp. Inc. v. Mackell, 422 F. 2d 293 (2 Cir. 1970) ; Bethview Amusement Corp. v. Cahn, *supra*. These courts have authorized the trial court to issue whatever protective orders are

---

[1] In addition to the cases discussed, see, also, Cambist Films, Inc. v. Duggan, 420 F. 2d 687 (3 Cir. 1969).

appropriate. Wherever duplicate prints are available, one copy is to be furnished the prosecutor. Where, as here, there is only a single print, the court may issue a restraining order prohibiting the publisher or exhibitor from concealing, destroying, or tampering with the film alleged to be obscene. It has also been suggested that films may be made available by a subpoena duces tecum.[2]

In answer to the argument that the Marcus and A Quantity of Books cases applied only to "massive seizures," the Bethview and Platt decisions point out that the impact of a single film may be sufficiently broad to justify First Amendment protection. The Platt case is squarely in point. There, as here, the plaintiff was operating an arcade consisting of peep shows. The United States District Court held (316 F. Supp. 300):

"* * * It is our conclusion that the 'peep show' type of operation does involve a sufficient number of customers, albeit of dubious taste, so that * * * Cambist v. Duggan [420 F. 2d 687 (3 Cir. 1969), requiring a prior adversary hearing] must apply."

In requiring the city to return the films to the owner, the court in Platt ordered (316 F. Supp. 301):

"* * * There is to be no mutilation, deletion, or unexplained disappearance of the films when production is requested by the prosecuting authorities."

2. The city has neither briefed nor argued the propriety of that portion of the trial court's order which enjoins further

[2] Neither plaintiff nor the city has discussed the effect of Minn. St. 626.21. That statute provides that if property which is the subject of an unlawful search and seizure is restored to its owner, "it shall not be admissible in evidence." It may be necessary in future cases to devise procedures for preserving evidence, deemed to be obscene, by bringing it to the attention of the court for pre-seizure scrutiny without jeopardizing its admissibility. We leave it to the trial court to construe the statute as it applies to the facts of this case since that problem is not before us on this appeal.

seizures except as limited by the terms of its order. We therefore decline to review that issue.

Our holding affects only the right to seize property, alleged to be obscene, without a prior adversary hearing. It does not affect the right to make arrests without such a hearing. We simply hold that the seizure was in violation of plaintiff's First Amendment rights, and he is entitled to the return of his property.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.