STATE of Minnesota, Appellant,

v.

Ferris ALEXANDER, Respondent.

STATE of Minnesota, Appellant,

v.

Edward ALEXANDER, Respondent.

Nos. 48598, 48599.

Supreme Court of Minnesota.

May 18, 1979.

Rehearing Denied July 19, 1979.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, Chief, Appellate Division, David W. Larson and Lee W. Barry, Asst. County Attys., Minneapolis, for appellant.

Randall D. B. Tigue, Minneapolis, for Ferris Alexander.

Freeman, Gill, Anderson, Eagan & Keating and Kermit A. Gill, Minneapolis, for Edward Alexander.

Owen Gleason, Patsy Reinard, Legal Counsel, Minneapolis, for Minnesota Civil Liberties Union, amicus curiae.

Robert J. Alfton, City Atty., and Larry I. Warren, Asst. City Atty., Minneapolis, for City of Minneapolis, amicus curiae.

Heard, considered, and decided by the court en banc.

## OPINION

YETKA, Justice.

Appeal by the state from an order of a three-judge district court, Hennepin County, dated January 24, 1978, reversing a judgment of conviction for contempt of court against defendant Ferris Alexander and affirming a pretrial order dismissing a contempt charge against defendant Edward Alexander. This court granted permission to appeal on March 23, 1978. We affirm in part and reverse in part and remand to the municipal court.

On April 19, 1976, Minneapolis police officer Jerry Larson, after purchasing a ticket, watched the movie "Oriental Blue" at the American Theater. On April 27, 1976, based upon his observation and the affidavit of an investigator in the city attorney's office, a criminal complaint was filed against Edward Alexander, Ferris Alexander, Peter Saba, and Benedict Jochim[1] for violation of the Minneapolis obscenity ordinance. On the same day, a judge of the Hennepin County Municipal Court issued an order directing the defendants "to retain said motion picture intact and in its entirety as shown on April 19, 1976" and to "make available said film for display to the Court to determine whether there is probable cause to believe said film is obscene." The prior adversary hearing was set for May 5, 1976. A similar order was issued on May 4, for a hearing to be held on May 10. On May 10, respondents were granted a continuance to May 14; the May 4th order remained in effect.

On Friday, May 14, 1976, respondents moved the municipal court to certify the question of the hearing procedures to the Minnesota Supreme Court and to grant them a continuance to seek a discretionary appeal. The motion was denied. The film was not brought into court as ordered. The court continued the hearing to May 17 in order to allow respondents to seek a writ of prohibition from the Supreme Court.

On Monday, May 17, counsel for respondents informed the municipal court that he had not sought a writ of prohibition because he had not had sufficient time and,

---

1. The only named defendants involved in this appeal are Ferris Alexander and Edward Alexander.

further, that the film was no longer playing at the American Theater and had not been brought into court. The respondents, upon request, left the courtroom, and the adversary hearing was held. The court found probable cause to believe the film was obscene, based on the report of Officer Larson, and probable cause to believe the respondents were owners and operators of the American Theater and agreed to issue a search warrant for the film. The court also requested the city attorney to charge respondents with contempt of court for violating the court order.

A search warrant was executed on May 26, 1976, the film was not found, and subsequently a criminal complaint was filed, charging respondents with contempt of court, in violation of Minn.St. §§ 588.20(4), (5); 609.05.

Respondents moved to dismiss the complaint on August 16. That motion was denied (September 29 and 30), and trial was set for October 5. Upon motion of counsel, separate trials were ordered. A verdict of guilty was returned against respondent Ferris Alexander on October 21. The sentence of 90 days was stayed pending appeal to the district court.

Respondent Edward Alexander moved to dismiss the charges against him.[2] This motion was granted on April 11, 1977, and was appealed by the Hennepin County Attorney.

The two appeals were consolidated and heard by three judges of Hennepin County District Court on June 13, 1977, and October 17, 1977. The conviction of Ferris Alexander was reversed, and the dismissal of the charges against Edward Alexander was affirmed. The state is appealing from that decision.

The legal issues raised on this appeal are:

1. Does requiring an exhibitor of an allegedly obscene film to produce that film at a prior adversary hearing violate his right against self-incrimination?

2. Were the defendants in this case representatives of a business entity and therefore not entitled to claim the privilege against self-incrimination?

3. Was the respondents' failure to obey the court order based on a good faith assertion of their fifth amendment privilege and thus a defense to a charge for contempt of court?

■ 1. This court has established the rule that an allegedly obscene film cannot be seized unless there has been a prior adversary hearing for a judicial determination that the film is obscene. See, *City of Duluth v. Wendling,* 306 Minn. 384, 237 N.W.2d 79 (1975); *Johnson v. City of Rochester,* 293 Minn. 156, 197 N.W.2d 244 (1972). The purpose of this rule is to protect the first amendment rights of both the exhibitor and the public by preventing the prior restraint of nonobscene materials. See, *Quantity of Copies of Books v. Kansas,* 378 U.S. 205, 213, 84 S.Ct. 1723, 1727, 12 L.Ed.2d 809, 814 (1964); *Marcus v. Search Warrants of Property,* 367 U.S. 717, 731, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127, 1136 (1961). The issue presented by this case is whether a court may constitutionally order an exhibitor to protect and preserve the film and to bring an allegedly obscene film to a prior adversary hearing.

The defendants argue that requiring them to produce the film at a prior adversary hearing is a violation of their fifth amendment right against compulsory self-incrimination. The state argues that producing the film in court is not sufficiently testimonial to violate the fifth amendment.

In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the United States Supreme Court addressed the issue whether production of evidence in response to a subpoena could be sufficiently testimonial to implicate the right against self-incrimination. It found that:

"The act of producing evidence in response to a subpoena * * * has com-

---

**2.** Respondent Edward Alexander brought a motion to dismiss on December 30, 1976. That motion was referred to the trial judge for determination. The motion was brought again on January 7, 1977, before another judge. That motion was also denied and referred to the trial judge for determination.

municative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control * * *. It also would indicate the * * * belief that the papers are those described in the subpoena. *Curcio v. United States*, 354 U.S. 118, 125, [77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225, 1231] (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments * * * are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof." 425 U.S. 410, 96 S.Ct. 1581, 48 L.Ed.2d 56. The court went on to note factors that might be significant in determining that the act of producing the evidence involves testimonial self-incrimination. One such factor is whether the existence or possession of the evidence is itself illegal, or is in issue in the case. 425 U.S. 411, 96 S.Ct. 1581, 48 L.Ed.2d 56. Another is the possibility of "implicit authentication," 425 U.S. 412, 96 S.Ct. 1582, 48 L.Ed.2d 57; that is, that compliance with the subpoena indicates that the one producing the evidence believes that the evidence produced is that described in the subpoena.

■ In the instant case, defendants contend that the act of producing the film at the hearing would be sufficiently testimonial and incriminating to qualify for fifth amendment protection because it would, in effect, be an admission of their control or possession of the film and an admission of their belief that the film produced was the film described in the order and, consequently, of their knowledge of the nature of the film. Minneapolis Ordinance No. 385.130, under which the defendants were charged, provides as follows:

"Distributing obscene materials. It is unlawful for any person knowingly to exhibit, sell, print, offer to sell, give away, circulate, publish, distribute, or attempt to distribute any obscene book, magazine, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph, motion picture film, play, image, instrument, statue, drawing or other article which is obscene. 'Obscene', for the purpose of this section, is defined as follows: Whether to the average person, applying contemporary, community standards, the dominant theme of the material taken as a whole appeals to prurient interests."

Defendants contend that the state is required to prove that they owned and operated the American Theater (or were otherwise in control of the exhibition of the film) and that they knew the nature of the film and that these elements will be easier to prove if defendants produce the film.

■ The state's response is that it was not relying on production of the film to prove possession or control. Whatever the state may argue now, however, at the time of the order the only evidence linking respondents to the American Theater was that contained in an affidavit of an investigator for the city attorney's office, stating that the application for a state sales tax permit for the theater was submitted in the name of Edward Alexander. The state clearly had to present more evidence than this to prove beyond a reasonable doubt that defendants had responsibility for exhibiting films at the American Theater. Further, if the state did not need more evidence, it should have been willing to give defendants immunity from use of any evidence obtained by producing the film, except that pertaining to the question of obscenity. Thus, we hold that the municipal court's order that defendants produce the allegedly obscene film at the prior adversary hearing was invalid because it violated defendants' right against self-incrimination.[3]

---

**3.** This court has never required that a judge actually view a film to rule that it is obscene.

See, *City of Duluth v. Wendling*, 306 Minn. 384, 389, 237 N.W.2d 79, 83 (1975). Where, as here,

However, the order of the municipal court issued on April 26, 1976 required the defendants:

" * * * *to retain said motion picture film* intact and in its entirety as shown on April 19, 1976 in the custody of Edward Alexander, Ferris Alexander, Peter Saba and Benedict Jochim at the American Theater, 14–16 East Lake Street, Minneapolis, Minnesota until Wednesday, May 5, 1976 at 9:30 a.m. at which time said parties *shall make available said film for display to the Court* * * *.*" (Italics supplied.)

Although we hold that the order to produce the film for showing was invalid, that portion of the order requiring defendants to retain said motion picture was not. In the case of *Johnson v. City of Rochester, supra,* this court said:

"The nearly unanimous weight of authority prohibits a seizure of allegedly obscene material prior to an adversary judicial hearing. But, recognizing the practical problem of preserving evidence, courts have proposed a number of devices to meet the problem. * * * These courts have authorized the trial court to issue whatever *protective* orders are appropriate. Wherever duplicate prints are available, one copy is to be furnished the prosecutor. Where, as here, there is only a single print, the court may issue a restraining order prohibiting the publisher or exhibitor from concealing, destroying, or tampering with the film alleged to be obscene. It has also been suggested that films may be made available by a subpoena duces tecum." 293 Minn. 160, 197 N.W.2d 247. (Italics supplied.) (Footnotes omitted.)

Where an appellate court can find one portion of a court order valid and another invalid, it has the duty not to invalidate the entire order, but only that portion

thereof that it finds violates the constitution or laws of this state. We hold that in this case the municipal court clearly has the authority to issue subpoenas and warrants. Since it has that authority, it has the authority to issue orders to protect and preserve evidence for trial. This authority is not based upon equitable powers, but is based upon the inherent powers of the trial court to protect the integrity of its own proceedings. Therefore, the findings of the district court that the municipal court orders were void in their entirety were clearly in error.

2. The state argues that defendants cannot claim the privilege against self-incrimination because they were being asked to produce "corporate" property rather than "personal" property and the privilege only applies to personal property.

It is well-established that corporations, partnerships, and other business entities cannot claim the privilege against self-incrimination. See, *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *United States v. White,* 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542, 1547 (1944); *Minnesota State Bar Association v. Divorce Assistance Association, Inc.,* 311 Minn. 276, 248 N.W.2d 733 (1976). In the instant case, however, the order was directed against defendants not as representatives of a business entity but as individuals. Consequently, defendants will be allowed to claim the privilege.

3. Defendants argue that, even if producing the film at their prior adversary hearing would not have violated the fifth amendment, their good faith assertion of the privilege should be a good defense to a charge of contempt of court for not obeying the order.

Having determined that defendants may invoke the fifth amendment with respect to

a police officer had seen the film and had dictated a statement recounting the scenes of the film, the judge could have ruled on whether there was probable cause to believe the film was obscene without having the film produced in court. Whether the statement provided sufficient detail is not as important as whether the judge could, from a sufficiently detailed statement, make a determination of obscenity. If a particular statement is not sufficient, it would be more appropriate to ask the police or prosecutor to provide a more sufficient description than to require the exhibitor to produce the film at the prior adversary hearing.

producing the film, we need not determine the issue of good faith.

The order of the district court upholding the order of the municipal court to dismiss all proceedings as to Edward Alexander is modified. The dismissal shall be final as to that count charging the said Edward Alexander with contempt for failing to produce the film, but that portion of the order dismissing the count charging Edward Alexander with contempt for failure to comply with the municipal court's order to retain said motion picture film intact is reinstated and the case remanded for trial on that issue alone.

The order of the district court reversing the verdict of guilty of contempt of court in the Ferris Alexander case is affirmed as to the count charging the said Ferris Alexander with contempt for failing to produce the film. Although Ferris Alexander was also convicted of contempt for failure to retain and preserve the film, we do not affirm the conviction on that count alone because the jury might well have been misled by instructions given it on both counts, that is, on the failure to retain and preserve and the failure to produce. We do not, however, remand for trial on the single charge. The district court found that the admission of certain hearsay evidence was prejudicial and that the state had thus failed to prove every element of its case. Because we believe that a retrial in this case may violate the double jeopardy clause of the Federal constitution, see, *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), we affirm the district court's reversal of the judgment of conviction on both counts.

Affirmed in part, reversed in part, and remanded for trial.

KELLY, Justice (concurring specially).

In *Johnson v. City of Rochester*, 293 Minn. 156, 197 N.W.2d 244 (1972), this court held that property alleged to be obscene may not be seized by the authorities in the absence of a prior adversary hearing. This holding was consistent with opinions of the United States Supreme Court and other Federal decisions. See, e.g., *A Quantity of Copies of Books v. Kansas*, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); *Marcus v. Search Warrant of Property*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); *Cambist Films, Inc. v. Duggan*, 420 F.2d 687 (3 Cir. 1969). Fundamental to *Johnson* was the idea that certain safeguards must be provided prior to the imposition of limitations on the rights of free speech. In deciding *Johnson*, we were not, however, unmindful of the potential practical difficulties created by our ruling. 293 Minn. 160, 197 N.W.2d 247. Hoping to prevent difficulty in the implementation of the rule, we cited several cases which had proposed devices to meet this problem. 293 Minn. 160, 197 N.W.2d 247. Examples of those devices include protective or restraining orders prohibiting the publisher or exhibitor from concealing, destroying, or tampering with the films or subpoena duces tecum to obtain the material in question.

That these procedures have not been effective is aptly demonstrated by the instant case. Here, the prosecution did all possible to comply with the applicable constitutional requirements. Yet, as our decision today indicates, the sought-after material, which is necessary to the prosecution of the case, is still unobtainable.

Since our decision in *Johnson*, the United States Supreme Court decided the case of *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). In *Heller*, a search warrant was issued for the seizure of an allegedly obscene film; the warrant was executed and the film seized. The defendant claimed that the seizure was unconstitutional absent a prior adversary hearing. The New York Court of Appeals sustained the conviction and the Supreme Court affirmed, stating:

"We affirm this holding of the Court of Appeals of the State of New York. This Court has never held, or even implied, that there is an absolute First or Fourteenth Amendment right to a prior adversary hearing applicable to all cases where allegedly obscene material is

seized. In particular, there is no such absolute right where allegedly obscene material is seized, pursuant to a warrant, to preserve the material as evidence in a criminal prosecution." 413 U.S. 488, 93 S.Ct. 2792, 37 L.Ed.2d 751. (Citations omitted.)

In so holding the Court distinguished *Marcus* and *Quantity of Books, supra,* on the grounds that they represented the seizure of mass quantities of books for the purpose of destruction, as opposed to the seizure of a film for the purpose of its preservation as evidence. The Court did point out that there was no evidence that the seizure of the film prevented its continued exhibition but went on to state that the " * * * temporary restraint [as evidenced by the seizure] in itself [did not] 'become a form of censorship,' even making the doubtful assumption that no other copies of the film existed." 413 U.S. 490, 93 S.Ct. 2793, 37 L.Ed.2d 753. Thus, it seems clear that our decision in *Johnson* is not constitutionally mandated and, despite what seems to be our recent affirmation of it in *City of Duluth v. Wendling,* 306 Minn. 384, 237 N.W.2d 79 (1975), I would urge that it be overruled prospectively.

I wish to stress that in principle, I am not opposed to the rule of *Johnson.* I am not in favor of the unjustified squelching of First Amendment rights. However, I do not believe, and in this I have the support of the United States Supreme Court, that the safeguards afforded by *Johnson* are necessary toward that end.

Were the system we suggested in *Johnson* working effectively as we envisioned, I would have no objection to its continuation. That this is not the case is clear from the case before us. I am convinced that by overruling *Johnson* and adopting the principles enunciated in *Heller* we will best be able to protect the rights of the accused without unduly hindering the legitimate interests of the state.

PETERSON, Justice (concurring specially).

I join fully in the opinion of Mr. Justice Yetka. I hesitate to join in the separate opinion of Mr. Justice Kelly, but only for the reason that it is not immediately germane to the issues for decision. However, I would not wish that hesitancy to be misconstrued as a rejection of his opinion that a search warrant, carefully conditioned, is constitutionally permissible.