725 P.2d 1104

STATE of Arizona, ex rel. Thomas E. COLLINS, Maricopa County Attorney, Petitioner,

v.

Hon. Alan S. KAMIN, Judge, Maricopa County Superior Court, Respondent,

and

Ralph William BAVARO, Jr., Real Party in Interest.

No. CV–86–0009–SA.

Supreme Court of Arizona, En Banc.

Sept. 12, 1986.

Thomas E. Collins, Maricopa Co. Atty. by Randy H. Wakefield, Deputy Maricopa Co. Atty., Phoenix, for petitioner.

Richard J. Hertzberg, Phoenix, for real party in interest.

HOLOHAN, Chief Justice.

The State filed a petition for special action to vacate an order of the respondent superior court judge. The challenged order remanded the charges against the real party in interest, Ralph William Bavaro, to the grand jury for a new finding of probable cause. The prosecution was proceeding against Bavaro for violation of the obscenity statute, A.R.S. § 13–3502.

The single issue presented is whether the grand jury in an obscenity case must view each of the allegedly obscene videotapes in its entirety before deciding whether there is probable cause to indict.

On July 30, 1985, defendant Bavaro was charged by indictment with four counts of rental of obscene items, in violation of A.R.S. § 13–3502. A.R.S. § 13–3502 provides, in pertinent part:

A person is guilty of a class 6 felony who, knowingly:

\* \* \* \* \* \*

2. Publishes, sells, rents, lends, transports in intrastate commerce, or commercially distributes or exhibits any obscene item, or offers to do any such things.

Under A.R.S. § 13–3501(2), an item is obscene when

(a) The average person, applying contemporary state standards would find that the item, taken as a whole, appeals to the prurient interest; and

(b) The item depicts or describes, in a patently offensive way, sexual activity as that term is described herein; and

(c) The item taken as a whole, lacks serious literary, artistic, political or scientific value.

On August 27, 1985 Bavaro moved for a new finding of probable cause on the grounds that the grand jury did not see each of the allegedly obscene items in its entirety. The State does not dispute the fact that the grand jurors did not view the full length of each tape. The trial judge ruled that the grand jury must view the tapes in their entirety because the statute requires that the films be judged as a whole.

■ A grand jury's duty is not to find guilt beyond a reasonable doubt, or to acquit. *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 618, 38 L.Ed.2d 561, 569 (1974). Its duty is to determine "whether *probable cause* exists to believe that a crime has been committed and that the individual being investigated was the one who committed it." *State v. Baumann,* 125 Ariz. 404, 408, 610 P.2d 38, 42 (1980) (emphasis added).

■ The trial judge here erred by remanding the case for a new finding of

probable cause. He was in error because he examined the quantity and quality of evidence before the grand jury. By weighing the evidence presented to the grand jury, he engaged in a procedure beyond a trial court's authority.

Relying on extensive federal authority, this court has decided previously that trial judges should not weigh the evidence already considered by grand juries. It is a "long established rule that an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *State ex rel. Preimsberg v. Rosenblatt,* 112 Ariz. 461, 462, 543 P.2d 773, 774 (1975).

Because the task of the grand jury is "to inquire into the existence of possible criminal conduct and to return only well-founded indictments, its investigative powers are necessarily broad." *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626, 643 (1972). Further, "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act." *Costello v. United States,* 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397, 401–02 (1956). In fulfilling their duty, the grand jury members decide what is evidence and what is not. The power to make those decisions is essential to their historical role in our criminal justice system. *Id.* In *Costello,* the Supreme Court upheld an indictment based entirely on hearsay testimony. *Id.* The grand jury in this case had significantly more than hearsay to rely on.

▮ A defendant may only challenge the grand jury's finding of probable cause on a limited number of grounds. These grounds are that an insufficient number of grand jurors concurred in the indictment, or that the defendant was denied a substantial procedural right. *State v. Baumann, supra,* 125 Ariz. at 409, 610 P.2d at

43, *citing* Rule 12.9, Ariz.R.Crim.P. 17 A.R.S. (hereinafter, Rule 12.9).[1] The insufficiency of the evidence is not a valid ground for challenge to the finding of the grand jury. *See State ex rel. Preimsberg, supra.* Bavaro's motion for a new finding of probable cause actually asked the trial judge to weigh the evidence.

In reviewing the evidence before the grand jury, the trial judge erred in concluding there was insufficient evidence to indict.

To establish probable cause, the grand jury first heard the testimony of Detective Douglas T. Eckert of the Mesa Police Department detailing the circumstances surrounding his rental of three videotapes from Bavaro and his employees. Additionally, Eckert gave fairly detailed synopses of each videotape. As to each videotape, Detective Eckert told the grand jury (1) the title; (2) the story line; (3) the kinds of sexual acts depicted; (4) the proportion of the tape consisting of such depictions; and (5) the explicitness of the sexual acts. Eckert testified about "Debbie Does Dallas" as follows:

A. "Debbie Does Dallas" is a movie of a girl named Debbie who tries to get on a cheerleading team in Dallas, and they wouldn't accept her because she was too young. And it shows her hitchhiking trying to go to her aunt's place.

In the meanwhile, while she is hitchhiking, she gets picked up by a truck driver, and later she gets left off the truck and gets arrested by police officers. And she is taken to a jail cell and forced to have sexual intercourse and sexual relations with one of the officers.

Because she does that, he lets her go, and she continues on to her aunt's place, which is called the farm or ranch. And it turns out it's a whorehouse, and Debbie gets there and she kind of likes the idea of staying there, and so she stays at the whorehouse and works there.

---

1. Rule 12.9(a), Rules of Criminal Procedure provides:

The grand jury proceedings may be challenged only by motion for a new finding of probable cause alleging that the defendant was denied a substantial procedural right, or that an insufficient number of qualified grand jurors concurred in the finding of the indictment.

And the rest of the movie shows all the scenes that go on at the whorehouse, very clearly showing all the sexual activities of those involved in different rooms.

Q. What kind of sex activities did it display?

A. It shows vaginal intercourse, cunnilingus, fellatio, oral sex, masturbation.

\* \* \* \* \* \*

Q. Would it be safe to say, Officer, that the majority of the film is made up of explicitly sexual scenes?

A. Yes.

\* \* \* \* \* \*

(Whereupon, the film was shown to the grand jury.)

Mr. Abdo [grand juror]: Do we have to watch any more of it?

Mr. Wakefield: Whenever the grand jury says to turn it off—

Mr. Abdo: Turn it off.

R.T. at 8–10.

After Detective Eckert described each videotape, the jurors viewed it. The viewing, of whatever length, gave the grand jurors the opportunity to test Detective Eckert's descriptions against their individual impressions of the videotapes. Nine found probable cause to indict on rental of obscene materials, and four did not.[2]

The grand jurors viewed as much of the videotapes as they wanted to satisfy themselves that the detective's testimony had been corroborated by the material in the tapes. The grand jury decided it was unnecessary to look beyond the evidence it had examined; it performed its duty, and it returned a valid indictment. The defendant's challenge to the indictment should not have been granted. The trial judge erred by granting the defendant's motion for a new finding of probable cause.

The order of the respondent judge remanding the indictment to the grand jury for a new finding of probable cause is vacated, the indictment is reinstated, and the respondent judge is directed to deny the motion to remand.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

FELDMAN, Justice, concurring.

The court recently held that a jury might convict a defendant of violating A.R.S. § 13–3502 without evidence, other than the allegedly obscene object itself, of the elements required by that statute and A.R.S. § 13–3501. *State v. Superior Court*, Ariz. (1986) (No. 17962–SA, consolidated with *State v. Lin*, No. 6671–PR, and *State v. Coulter*, No. 18364–SA, filed July 2, 1986).[1] The court today holds that the grand jury may indict for violation of the same statute by listening to the opinions and descriptions of the investigating officers, without examining the allegedly obscene item itself. It is interesting to think what next month may bring.

Respectable authority holds that a magistrate presiding at a preliminary hearing must look at the object himself and cannot rely on an officer's description or judgment in making a determination of probable cause in an obscenity prosecution. *Piepenburg v. Cutler*, 649 F.2d 783, 790 (10th Cir.1981). *But see State v. Alexander*, 281 N.W.2d 349, 352–53 n. 3 (Minn.1979). Nevertheless, under the facts of this case I concur in the result reached by the majority. It is important to note that the prosecution attempted neither to keep the offending item from the grand jury nor to induce the jurors not to watch the entire film. Having seen part of the film, the jurors themselves asked whether they could stop and rely upon the descriptions of the remainder of the movie from the officers who had seen it. Thus the prosecution complied with the requirements of *Crim-*

---

**2.** The concurrence of at least nine jurors is needed to return an indictment. A.R.S. § 21–414(A).

**1.** Thus no evidence aside from the allegedly obscene item itself is required to establish "contemporary state standards" or the lack of "seri-

ous literary, artistic, political, or scientific value." *See* A.R.S. § 13–3501(2)(a) and (c). In effect this allows each juror to decide these issues for himself. *State v. Superior Court*, Ariz. (Feldman, J., dissenting).

*mins v. Superior Court,* 137 Ariz. 39, 668 P.2d 882 (1983), and the grand jury arguably acted within its powers under A.R.S. § 21–412.

In *New York v. P.J. Video, Inc.,* —— U.S. ——, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986), the United States Supreme Court held that a magistrate may rely on affidavits describing the general content of a film to establish probable cause for issuance of a search warrant in an obscenity investigation. Three members of the Court dissented with respect to the adequacy of the affidavits, *id.* at ——, 106 S.Ct. at 1615, but the entire Court agreed that no higher showing of probable cause was required in obscenity cases. While it may be persuasively argued that the showing of probable cause for indictment or information should be higher than that necessary for issuing a warrant, to date our cases hold that a showing of "fair probability" is sufficient. *E.g., State v. Coconino County Superior Court,* 139 Ariz. 422, 424, 678 P.2d 1386, 1388 (1984); *State v. Baumann,* 125 Ariz. 404, 610 P.2d 38 (1980); *see also Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983). The evidence considered by the grand jury in this case was sufficient to establish a "fair probability" of obscenity.

I concur in the result.